**FILED**
**Lucinda B. Rauback, Clerk**
**United States Bankruptcy Court**
**Augusta, Georgia**
*By jpayton at 9:09 am, Oct 04, 2017*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Savannah Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 Case |
| | ) | Number <u>17-40113</u> |
| J. Timothy Shelnut, | ) | |
| | ) | |
| Debtor | ) | |
| _____ | ) | |

## OPINION AND ORDER

This order addresses the First Application for Attorney's Fees ("Application") filed by the McCallar Law Firm ("MLF") in connection with its representation of J. Timothy Shelnut ("Debtor") as Debtor's counsel. Virginia "Sam" Pannill, f/k/a Virginia P. Shelnut ("Pannill"), and the United States Trustee ("UST") object to the Application. This is a core proceeding under 28 U.S.C. §157(b)(2)(A) and the Court has jurisdiction to address the matter pursuant to 28 U.S.C. §1334. For the reasons set forth herein, the objections are sustained in part and denied in part.

## FINDINGS OF FACT

MLF's Application seeks attorney fees and expenses in the amount of $44,502.89. The Application includes work performed by two attorneys, C. James McCallar, Jr. ("McCallar") at an hourly rate of $400.00, and Tiffany E. Caron ("Caron") at an hourly rate of $300.00.

In its Disclosure of Compensation of Attorney for Debtor

&AO 72A
(Rev. 8/82)

provided pursuant to 11 U.S.C. §329(a) and Federal Rule of Bankruptcy Procedure 2016(b), MLF certified that the "compensation paid to it within one year before the filing of the petition in bankruptcy, or agreed to be paid to [it], for services rendered or to be rendered on behalf of the debtor[] in contemplation of or in connection with the bankruptcy case . . ." by the Debtor has been $8,283.00. Dckt. No. 1 at 12. MLF certified Debtor was the source of this compensation, and the source of the compensation to be paid to it. Id. MLF also disclosed Debtor has paid an additional $1,717.00 for the filing fee. Id. In the accompanying affidavits provided with the Application to Retain Counsel, both McCallar and Caron certified to the receipt of this $10,000.00 retainer. Dckt. No. 7, ¶19-20.

After the petition date, MLF received two payments in connection with its representation of the Debtor: (i) $4,000.00 in February and (ii) $2,500.00 in March. These two payments actually were not made from Debtor's account, but rather from the account of Four Seasons Financial Partners, Inc. ("Four Seasons"), a corporation owned by Debtor. According to Debtor's schedules, Four Seasons owed Debtor $4,484,673.00 as of April 15, 2016.[1] Sch. A/B,

---

[1] The schedules indicate subsequent loan payments have been made since April 15, 2016 and the outstanding balance needs to be updated by the accountant. Sch. A/B, Dckt. No. 41.

2

Dckt. No. 41.   Debtor's schedules also value Four Seasons at $0.
Id.

MLF's Application notes it has $11,453.00 on hand to apply to the fee request.[2]   Dckt. No. 85 at 3.   Pannill deposed Four Seasons' bookkeeper and discovered the two post-petition checks to MLF were drawn on the account of Four Seasons, rather than Debtor's account.   MLF has not amended its pleadings to disclose these two post-petition payments were from Four Seasons, rather than Debtor.'

For years, Debtor has been in the insurance business selling insurance policies to teachers.   Several years ago, Debtor ceased actively selling insurance, but many of the policies continue to generate income based upon renewal premiums and commissions from renewals.   Four Seasons is the entity that receives this renewal income.   No new policies are actively being sold through Four Seasons.   According to Ms. Kathy Kitchens, Four Seasons' bookkeeper, Debtor's personal expenses are being paid from Four Seasons and these payments are designated by a special general ledger number and credited as income to Debtor, and as a loan repayment.   Dckt. No. 77, Dep. Tr. 26:3-12; 28:7-15; 30:23-25.

Pannill filed a Motion to Appoint a chapter 11 trustee

---

[2]   While the Application does not specify, it appears the $11,453.00 includes the $6,500.00 paid post-petition and the remaining pre-petition retainer.

AO 72A
(Rev. 8/82)

when she discovered Debtor's actions regarding these renewals and other matters.  Dckt. No. 46.  Pannill urged the Court to appoint a trustee to take control of these renewals to avoid Debtor's improper depletion of these funds.  Ultimately, the parties agreed to the appointment of a chapter 11 trustee and an order was entered giving the trustee control over Four Seasons' income and bank accounts.  Dckt. No. 83.

### CONCLUSIONS OF LAW

Pannill and the UST object to MLF's Application.  Pannill raises five objections to the Application.  First, Pannill argues MLF failed to properly disclose that Four Seasons was the source of some of the $11,453.00 on hand to pay its bill.  In its post hearing brief, Pannill argues MLF's receipt of the fees from Four Seasons was sufficient to place MLF on notice that Four Seasons was Debtor's alter-ego and negates MLF's required disinterestedness. Second, Pannill argues attorney fees should not be allowed because Debtor filed his bankruptcy in bad faith as a means to avoid the enforcement of a domestic court order finding Debtor in willful contempt and ordering his arrest.  Third, Pannill contends all fees associated with the appeal of this Court's previous motion for relief order should be disallowed because the order was non-appealable under 28 U.S.C. §1334(d).  Fourth, Pannill contends the time spent by two senior attorneys was an unnecessary duplication of

4

work.  Finally, Pannill argues the time and expenses expended by the lawyers are unnecessarily high and unreasonable.

The UST raises three objections to the Application. First, it contends MLF's Application should be reduced for its failure to comply with the disclosure requirements of 11 U.S.C. §329 and Bankruptcy Rules 2014(c) and 2016.  Second, it contends Four Seasons is a non-debtor affiliate and insider of the Debtor.  Thus, the UST contends MLF's receipt of the undisclosed payments from Four Seasons negates its disinterestedness and creates a disqualifying conflict because the post-petition transfers are unauthorized and therefore the bankruptcy estate may have a claim against MLF to recover the post-petition transfers.  Lastly, the UST argues there was an unnecessary duplication of services by two senior attorneys, meriting a deduction in the Application.

Contrarily, MLF argues it still fulfills the disinterested requirement because:

> The checks were written on an account of Four Seasons; however, all funds paid out of Four Seasons on account of [Debtor's] personal expenses are treated as loan repayments to [Debtor].  Therefore, not only have no fees been paid from the checks received from Four Seasons, but Four Seasons is also not the payor of any fees to be approved since said funds are being credited against the amount owed to Debtor by Four Seasons and are actually being paid by [Debtor] notwithstanding the check not having been run through [Debtor's] personal account. [MLF] never agreed to accept payment

5

and did not receive payment from Four Seasons. Dckt. No. 109, at 2.

Second, MLF argues the Court's previous order did not make a finding of bad faith. Third, MLF contends the Court's order granting relief from the automatic stay is appealable notwithstanding the abstention. Fourth, MLF disagrees there was a duplication of efforts, stating the lawyers made every attempt to avoid duplication of work by conferring on matters and assigning separate tasks. This work division made it necessary for both attorneys to attend these pivotal hearings so their combined knowledge could efficiently be used to best represent their client. Id. at 5-6. Lastly, regarding the reasonableness of the fees, MLF says "[t]he time spent on this case has been significant, but certainly not out of line with a typical contested Chapter 11 cases." Id. at 6.

**Disclosure**.

The Bankruptcy Code and Rules require the utmost disclosure and candor from professionals seeking employment and compensation from the bankruptcy estate. In re Kisseberth, 273 F.3d 714, 720 (6th Cir. 2001). An application to employ must be filed pursuant to 11 U.S.C. §327[3] and Federal Rule of Bankruptcy Procedure

---

[3] 11 U.S.C. §327(a) states in pertinent part:

6

2014.   Bankruptcy Rule 2014(a) provides:

> An order approving the employment of attorneys
> ... pursuant to §327, §1103, or §1114 of the
> Code shall be made only on application of the
> trustee or committee . . . . The application
> shall state the specific facts showing the
> necessity for the employment, the name of the
> person to be employed, the reasons for the
> selection, the professional services to be
> rendered, any proposed arrangement for
> compensation, and, to the best of the
> applicant's knowledge, all of the person's
> connections with the debtor, creditors, any
> other party in interest, their respective
> attorneys and accountants, the United States
> trustee, or any person employed in the office
> of the United States trustee. The application
> shall be accompanied by a verified statement of
> the person to be employed setting forth the
> person's connections with the debtor,
> creditors, any other party in interest, their
> respective attorneys and accountants, the
> United States trustee, or any person employed
> in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a). The level of disclosure required by Rule

2014(a) is mandatory, regardless of whether the disclosure would

expose a conflict of interest. In re Matco Elecs. Grp., Inc., 383

B.R. 848, 852 (Bankr. N.D.N.Y. 2008). This disclosure duty is a

continuing duty, and continues even after counsel's appointment. In

---

> Except as otherwise provided in this section, the trustee,
> with the court's approval, may employ one or more
> attorneys, accountants, appraisers, auctioneers, or other
> professional persons, that do not hold or represent an
> interest adverse to the estate, and that are disinterested
> persons, to represent or assist the trustee in carrying
> out the trustee's duties under this title.

7

AO 72A
(Rev. 8/82)

re Keller Fin. Servs. of Fla., Inc., 248 B.R. 859, 898 (Bankr. M.D. Fla. 2000); In Re HLJ Enters., Inc., 2011 WL 3438472, at *3 (Bankr. S.D. Ga. June 28, 2011) (citing In re Jennings, 199 F. App'x 845, 848 (11th Cir. Oct. 4, 2006).

Section 329(a) of the Bankruptcy Code and Bankruptcy Rule 2016 require disclosures specific to compensation.  Section 329(a) provides:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. §329(a).  Bankruptcy Rule 2016 imposes a duty to fully and completely disclose all fee agreements and payments.  Bankruptcy Rule 2016(a) and (b) provides:

> (a) An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the

8

> compensation so paid or promised, . . . . The
> requirements of this subdivision shall apply to
> an application for compensation for services
> rendered by an attorney or accountant even
> though the application is filed by a creditor
> or other entity. Unless the case is a chapter 9
> municipality case, the applicant shall transmit
> to the United States trustee a copy of the
> application.
>
> (b) Every attorney for a debtor, whether or not
> the attorney applies for compensation, shall
> file and transmit to the United States trustee
> within 14 days after the order for relief, or
> at another time as the court may direct, the
> statement required by §329 of the Code . . . .
> A supplemental statement shall be filed and
> transmitted to the United States trustee within
> 14 days after any payment or agreement not
> previously disclosed.

Fed. R. Bankr. P. 2016(a)-(b).

The purpose of Rule 2016(a) is to provide the Court and the UST and other parties in interest with the necessary information to determine whether the Debtor's counsel meets the Bankruptcy Code's threshold requirements to serve as Debtor's counsel. Rule 2016(b) imposes a continuing duty upon Debtor's counsel to supplement its original statement "within 14 days after any payment or agreement not previously disclosed." Id. If a debtor's attorney subsequently receives funds from a non-party, the attorney is required to promptly supplement its disclosure. In re Kisseberth, 273 F.3d 714 (6th Cir. 2001). Sanctions may be imposed even when the failure to disclose was through inadvertence or negligent, and

9

AO 72A
(Rev. 8/82)

regardless of whether the estate was actually harmed. <u>In re McTyeire</u>, 357 B.R. 898 (Bankr. M.D. Ga. 2006)(even where the failure to disclose is nominal, disgorgement of all fees is appropriate); <u>In re Gay</u>, 390 B.R. 562 (Bankr. D. Md. 2008)(disgorgement appropriate for Rule 2016(b) violation even when there is no identifiable injury to creditors).

In this case, notwithstanding MLF's certifications that all payments were to be made by Debtor, MLF received two post-petition payments from Four Seasons totaling $6,500.00 and failed to timely amend its application and disclosure. MLF's argument that these were actually Debtor's funds because they were loan repayments does not alter the fact that MLF failed to disclose the payments were from Four Seasons' account, rather than Debtor's. The details of the transaction are missing. The source of these funds was initially discovered upon Pannill's deposition of Four Seasons' bookkeeper. Counsel's failure to properly disclose the required information may result in its disqualification, as well as the disgorgement of fees and imposition of sanctions. <u>In re Prince</u>, 40 F.3d 356 (11th Cir. 1994); <u>see generally</u>, Collier on Bankruptcy §2014.03 (16th ed. 2015); <u>In re Adam Furniture, Indus., Inc.</u>, 158 B.R. 291, 299 (Bankr. S.D. Ga. 1993). For MLF's failure to fully disclose the source of these payments as well as the source of payment, the Court finds disgorgement of the $6,500.00 is

10

appropriate.

**Conflict of Interest**.

Pannill and the UST argue MLF must be denied compensation because it has a conflict of interest due to the undisclosed and unauthorized post-petition receipt of checks from Four Seasons. Pannill argues Four Seasons is the alter ego of Debtor negating MLF's defense that the payments were loan repayments from Four Seasons and therefore the payments are property of the bankruptcy estate. MLF argues Debtor is the true source of the payments, not Four Seasons, as the payments are treated as loan repayments. The UST argues MLF's characterization of the payment as a loan repayment makes the unauthorized post-petition transfers avoidable under 11 U.S.C. §549. Pannill and the UST argue MLF's conflict arose on the date it received its first undisclosed payment from Four Seasons, February 21, 2017 and continued through the remaining time covered by the Application, May 12, 2017, covering $22,800.00 of professional fees that should be disallowed.

Pursuant to 11 U.S.C. §328(c) a court may deny compensation to professionals who are not disinterested or who have an adverse interest to the bankruptcy estate. Section 328(c) provides:

> (c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and

11

> reimbursement of expenses of a professional
> person employed under section 327 or 1103 of
> this title if, at any time during such
> professional person's employment under section
> 327 or 1103 of this title, such professional
> person is not a disinterested person, or
> represents or holds an interest adverse to the
> interest of the estate with respect to the
> matter on which such professional person is
> employed.

11 U.S.C. §328(c). The Bankruptcy Code defines a "disinterested person" as "a person that is not a creditor, an equity security holder, or an insider [of the Debtor] . . . and does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C §101(14). The phrase "interest materially adverse to the estate" has been held to mean:

> holding or representing an interest adverse to
> the estate as possessing, or serving as an
> attorney for a person possessing, either an
> 'economic interest that would tend to lessen
> the value of the bankruptcy estate or that
> would create either an actual or potential
> dispute in which the estate is a rival claimant
> . . . or . . . a predisposition under the
> circumstances that render such a bias against
> the estate.'

In re Prince, 40 F.3d 356, 361 (11th Cir. 1994)(quoting Roger J. Au & Son, Inc. v. Aetna Ins. Co., 64 B.R. 600, 604 (N.D. Ohio 1986)(citation omitted). A debtor's counsel's receipt of post-

12

petition payments from a non-debtor wholly owned affiliate of the debtor has been held to create a disqualifying conflict which negates the required disinterestedness necessary to serve as the debtor's counsel.  See In re W.T. Mayfield Sons Trucking Co., Inc., 225 B.R. 818 (Bankr. N.D. Ga. 1998)(holding that undisclosed payments by a debtor's subsidiary to bankruptcy counsel constituted unauthorized transfers of property of the estate and even if not property of the bankruptcy estate the court still could disgorge excessive and unreasonable fees).   The language of §328(c) is permissive "[a]nd, in the absence of actual injury or prejudice to the debtor's estate, this sanction [(denial of fees)] should not be rigidly applied.  When injury to the debtor's estate occurs however, denial of fees is proper."  In re Prince, 40 B.R. at 360 (internal citations omitted).

There has not been a hearing nor enough evidence submitted for the Court to determine whether Four Seasons is the alter-ego of Debtor, and it is not necessary to resolve this matter.  Ms. Kitchens testified in her deposition that Debtor's personal expenses paid by Four Seasons are treated as loan repayments to Debtor.  As the UST argues, it is not necessary to find Four Seasons is the alter ego because by MLF's admission the transferred money would belong to the bankruptcy estate.  MLF states:

The checks were written on an account of Four

AO 72A
(Rev. 8/82)

Seasons; however, all funds paid out of Four Seasons on account of [Debtor's] personal expenses are treated as loan repayments to [Debtor].  Therefore, not only have no fees been paid from the checks received from Four Seasons, but Four Seasons is also not the payor of any fees to be approved since said funds are being credited against the amount owed to Debtor by Four Seasons and are actually being paid by [Debtor] notwithstanding the check not having been run through [Debtor's] personal account.  [MLF] never agreed to accept payment and did not receive payment from Four Seasons.

Dckt. No. 109, at 2.  Furthermore, even if the money belonged to Four Seasons, the Court would still be able to review the fees.  See In re W.T. Mayfield Sons Trucking Co., Inc., 225 B.R. at 826; In re Miller Auto. Grp., Inc., 521 B.R. 323, 333 (Bankr. W.D. Mo. 2014)("The general rule is that, notwithstanding an ultimate third party owner of the funds, a retainer is held in trust for the debtor's estate to the extent it is utilized to compensate the estate's attorney" and is subject to bankruptcy court review).

The potential dispute of whether these undisclosed post-petition payments are unauthorized avoidable transfers creates an adverse interest because the bankruptcy estate has a potential cause of action against MLF.  In such circumstances, MLF would not be able to independently evaluate the merits of pursuing the cause of action against itself or Four Seasons.  See In re Prince, 40 B.R. at 360 (the prejudice is whether the law firm could make unbiased decisions in the best interest of its client).

14

Notwithstanding the foregoing, in this case, the prejudice is avoided because a chapter 11 trustee has been appointed and can objectively evaluate the merits of any avoidable transfers. See In re Music, 2016 WL 2583734, at *4 (Bankr. S.D. Ga. May 2, 2016)(conditioning debtor's counsel's continued employment upon the debtor obtaining independent counsel to investigate potential preference actions against entities who wrote checks to debtor's counsel on the debtor's behalf). In this case, like in In re Music, the Court will allow Debtor to maintain the counsel of his choosing since a chapter 11 trustee already has been appointed. Furthermore, the Court finds disgorgement is not merited on these grounds.

**Bad Faith**.

Pannill argues attorney fees should not be allowed because Debtor filed his bankruptcy in bad faith as a means to avoid the enforcement of a domestic court order that found Debtor in willful contempt and ordered his arrest. This Court did find abstention was appropriate under the Eleventh Circuit's Carver v. Carver, 954 F.2d 1573 (11th Cir. 1992) precedent and granted relief from the stay for Pannill to pursue enforcement of the state court order. However, the Court did not find the bankruptcy was filed in bad faith as to all creditors or conduct a bad faith dismissal analysis. See In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1394-95 (11th Cir. 1988)(listing factor to consider whether a bankruptcy petition was

15

filed in bad faith). Furthermore, in this case the parties settled that dispute and Debtor dismissed his appeal and consented to the appointment of a chapter 11 trustee. Therefore, the Court does not find counsel's fees should be disallowed for Debtor's purported bad faith.

**Appealability Pursuant To 28 U.S.C. §1334(d)**.

Pannill contends all fees associated with the appeal of this Court's previous abstention and motion for relief order should be disallowed because Pannill contends that order was non-appealable under 28 U.S.C. §1334(d). Pannill's request for abstention or in the alternative relief from the automatic stay was addressed by one order. The Court, agrees with MLF, concluding the motion for relief from stay order is an appealable order. See Old W. Annuity & Life Ins. Co. v. Apollo Group, 605 F.3d 856, 862-63 (11th Cir. 2010)(citing BorgWarner Acceptance Corp. v. Hall, 685 F.2d 1306, 1309 (11th Cir. 1982))("A stay-relief order is a final order that is immediately appealable."). Further, the parties agreed to the dismissal of the appeal and appointment of the chapter 11 trustee. The Court finds no fees should be disallowed based upon Pannill's argument that the Court's order abstaining and granting relief from the stay to Pannill was non-appealable.

**Duplication and Reasonableness**.

Both Pannill and the UST argue MLF's Application includes

16

unnecessary duplications of services and unreasonable fees. They specifically question MLF's entries regarding preparing for and attending the motion for relief/abstention hearing and the subsequent hearing on the appointment of a chapter 11 trustee. A bankruptcy "court shall not allow compensation for unnecessary duplication of services . . . ." 11 U.S.C. §330(a)(4)(A)(i). In the Eleventh Circuit, attorney compensation under 11 U.S.C. §330 is determined using the "lodestar method." See Norman v. Housing Authority of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). The "lodestar" is "the reasonable time expended by counsel in performing the reasonably required services rendered multiplied by a reasonable hourly rate." In re Golf Augusta Pro Shops, Inc., 2004 WL 768576, *2 (Bankr. S.D. Ga. Feb. 6, 2004).

Two MLF attorneys represent Debtor. McCallar has been practicing law for more than 40 years and specializes in complex bankruptcy matters, including in chapter 11 debtor work. His stated hourly rate in this case is $400.00. Caron has been praticing law for over eight years, focusing on complex bankruptcy matters, including chapter 11 debtor work. Her stated hourly rate in this case is $300.00.

To date, this has been a very contested chapter 11 case with a lengthy pre-bankruptcy history. With respect to the hearing on Pannill's motion for relief/abstention, McCallar charged the

17

estate for 22.5 hours at $400/hour, over a four day period including the hearing date, resulting in fees of $9,000.00; and Caron charged 7.75 hours at $300/hour, for $2,325.00 over a two day period, including the hearing.    The hearing was highly contested and lengthy, lasting almost 8 hours with both MLF attorneys attending all, or a substantial part, of the hearing.

With respect to the hearing on the appointment of the trustee, for work performed over a two day period including the hearing date, McCallar charged 12 hours at $400/hour, totaling $4,800.00; Caron logged 6.75 hours at $300/hour for $2,025.00.  The hearing was concluded after approximately 5 hours, and both MLF attorneys attended all, or a substantial part, of the hearing.

In considering the record in this bankruptcy case, the Court does not find an unnecessary duplication of work.  The Court finds MLF avoided duplication when appropriate by conferring on matters and assigning separate tasks.  This case has had expedited and lengthy contested hearings and the work done by both attorneys was not unnecessary or duplicative.  Based upon the nature of the work and the labor division, the Court finds it was appropriate for both attorneys to attend these pivotal hearings so their combined knowledge and skill could be utilized to best represent Debtor.

Lastly, regarding the reasonableness of the fees, MLF agrees "[t]he time spent on this case has been significant, but

certainly not out of line with a typical contested Chapter 11 cases." Dckt. No. 109 at 6. To determine a reasonable rate, courts look to the rates charged in "the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." In re Augusta Pro Shops, Inc., 2004 WL 768576, at *1 (quoting Blum v. Stenson, 465 U.S. 886, 889 n. 11 (1984). McCallar and Caron are highly skilled and experienced attorneys and the respective hourly rates of $400.00 and $300.00 are reasonable and common for comparable expertise and experience in handling such matters. For these reasons, the Court finds the time spent and the rates charged reasonable and not unnecessarily duplicated.

For the foregoing reasons, the objections of the UST and Pannill are SUSTAINED in part and DENIED in part. MLF's application for compensation is ORDERED reduced by $6,500.00 for total fee award of $37,007.50 in fees and $995.39 in expenses.

SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this ___4th___ Day of October 2017.

19

AO 72A
(Rev. 8/82)